Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ESPADA, MIÑANA & PEDROSA LAW OFFICES, PSC<br><br>Recurridos<br><br>v.<br><br>JUAN FÉLIX TRINIDAD Y BLANCA NELLY LIRA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; ERIC QUETGLAS JORDAN H/N/C QUETGLAS LAW OFFICES<br><br>Peticionarios | KLCE202400365 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil número: BY2021CV03932<br><br>Sobre:<br>Cobro de Dinero – Ordinario |

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de mayo de 2024.

Comparece la parte peticionaria, el licenciado Eric Quetglas Jordán, mediante el recurso de epígrafe y nos solicita la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 29 de febrero de 2024, notificada al día siguiente. En el referido dictamen, el foro recurrido descalificó al representante legal del peticionario, el licenciado José F. Quetglas Jordán, así como a otros abogados, incluyendo el que fuera socio, familia o tuviera interés personal con cualquiera de las partes del caso.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado. Veamos.

**I**

El 29 de septiembre de 2021, Espada Miñana & Pedrosa Law Offices, PSC, (EMP), representado por el licenciado Juan R. Dávila Díaz (licenciado Dávila Díaz), incoó una *Demanda* sobre cobro de dinero en contra de Eric Quetglas Jordán h/n/c Quetglas Law Offices (EQJ o peticionario), Juan Félix Trinidad Rodríguez y Blanca Nelly Lira, por sí y en

representación de la Sociedad Legal de Gananciales compuesta por ambos (Trinidad-Nelly).[1] Alegó que, mientras estaba representado por el licenciado Luis E. Miñana Rodríguez-FEO (licenciado Miñana Rodríguez), fue contratado, junto a EQJ, por Trinidad-Nelly como representación legal de estos en varios casos, pactando a contingencia los honorarios de abogado. Según adujo, Trinidad-Nelly le solicitó la renuncia a la representación legal, motivados por una solicitud que les hiciera EQJ a esos efectos, mas no por el desempeño del bufete. En virtud de ello, EMP reclamó la suma de $812,200.00 por concepto de honorarios de abogado y $73,993.57 por reembolso de los gastos invertidos.

Por su parte, el 17 de noviembre de 2022, EQJ, por derecho propio, presentó una *Contestación, Reconvención y Demanda Contra Terceros*.[2] En su alegación responsiva, negó las alegaciones en su contra. Sostuvo que la renuncia de EMP fue por justa causa por el incumplimiento y conducta culposa desplegada en la representación conjunta de Trinidad-Nelly, según surgía de las alegaciones hechas en su contra en otros casos.

Por otro lado, en su reconvención, EQJ planteó la extinción de cualquier acreencia a EMP, al amparo del Artículo 1153 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 9241; que el contrato de representación legal fue entre este último y EQJ, no con Trinidad-Nelly, cuyo pago por honorarios era contingente al resultado de la reclamación en la cual participara, sin que ello conllevara un costo adicional para Trinidad-Nelly; que la solicitud de renuncia de representación legal que se le hizo a EMP fue debido a la conducta culposa desplegada por este, la cual no le permitía prestar una representación legal adecuada a Trinidad-Nelly.

En cuanto a la demanda contra tercero, EQJ alegó que EMP, así como los licenciados Miñana Rodríguez y Dávila Díaz, actuaron en común acuerdo para planificar e implementar un esquema malicioso en abuso del derecho, al incoar la acción de epígrafe sobre las mismas controversias

---

[1] Apéndice del recurso, págs. 1-3.
[2] Íd., págs. 41- 58.

planteadas por EQJ en otro pleito. Según arguyó, dichas controversias debieron litigarse en aquel pleito y no en uno separado que incluyera tanto al bufete como a sus clientes. Adujo que EMP y el licenciado Miñana Rodríguez, por medio del licenciado Dávila Díaz, cometieron perjurio y fraude al Tribunal en su intento de sustentar sus alegaciones con falsas representaciones. Sostuvo que, al así obrar, abusaron maliciosamente del derecho, en violación al Artículo 18 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5337. Indicó que EMP y los mencionados licenciados respondían de forma solidaria y vicaria por los daños y perjuicios que sus conductas torticeras le habían ocasionado. Por lo anterior, EQJ reclamó el pago de una indemnización por daños y perjuicios, daños punitivos, costas, interés legal aplicable y honorarios de abogado.

Luego de varias incidencias procesales, el 20 de abril de 2023, se celebró una vista argumentativa en la cual los abogados que se estaban representando por derecho propio argumentaron sobre la representación legal que estaban llevando a cabo en su carácter personal, conforme a la Regla 9.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 9.4.[3] Surge de la *Minuta* de la mencionada vista que los licenciados Dávila Díaz, Miñana Rodríguez y EQJ, quienes se encontraban representándose por derecho propio, eran partes en el pleito y, del caso llegar a juicio, terminarían siendo testigos y abogados.

Atendidos los planteamientos de las partes, el 1 de mayo de 2023, notificada al día siguiente, el Tribunal de Primera Instancia emitió una *Resolución* mediante la cual ordenó, *motu proprio*, la descalificación total e inmediata de los licenciados Dávila Díaz, Miñana Rodríguez y EQJ como representantes legales en el caso de epígrafe.[4] El foro *a quo* expresó que, en aras de evitar una posible violación al Canon 22 del Código de Ética Profesional, no podía permitir que continuara la representación legal actual,

---

[3] Véase, Entrada Núm. 184 del Caso Núm. BY2021CV03932 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[4] Véase, Entrada Núm. 191 del Caso Núm. BY2021CV03932 en el SUMAC.

pues existía el riesgo de incurrir en una violación ética una vez los abogados testifiquen en el juicio en su fondo.

El 19 de mayo de 2023, el licenciado José F. Quetglas Jordán (JQJ) del bufete Quetglas Law Firm, PSC, presentó una *Moción Asumiendo Representación Legal* de EQJ,[5] la cual fue aceptada por el foro primario mediante *Orden* del 19 de mayo de 2023, notificada el 24 del mismo mes y año.[6] Posteriormente, el 7 de noviembre de 2023, el licenciado Norberto Quiñones Gandarillas (Quiñones Gandarillas) asumió la representación legal de EMP y del licenciado Miñana Rodríguez, lo cual fue aceptado por el foro recurrido el mismo día.[7]

Así las cosas, el 11 de diciembre de 2023, el licenciado Quiñones Gandarillas, en representación de EMP y del licenciado Miñana Rodríguez, sometió una solicitud de descalificación.[8] En síntesis, solicitó la descalificación del licenciado JQJ, toda vez que, según alegó, este último tenía una serie de conflictos de interés y responsabilidad pecuniaria la cual no permitía que ostentara la representación legal de su hermano EQJ en el pleito de autos. Especificó que el licenciado JQJ no solo fue representante legal de Trinidad-Nelly en un caso previo, sino que también era potencial testigo y sería objeto de deposiciones, así como de contrainterrogatorios, en la vista en su fondo del caso de epígrafe y de los demás casos entre las partes.

Por su parte, el 22 de diciembre de 2023, la representación legal de EQJ presentó una *Moción de Descalificación del Abogado Norberto Quiñones.*[9] En esencia, arguyó que el licenciado Quiñones Gandarillas tenía serios conflictos de intereses y conocimiento personal de eventos pertinentes al asunto en controversia que impedían que pudiera representar a EMP y al licenciado Miñana Rodríguez. Argumentó que dicho letrado, con toda probabilidad, podía ser llamado a declarar, tanto en contra

---

[5] Apéndice del recurso, págs. 59-60.
[6] Véase, Entrada Núm. 196 del Caso Núm. BY2021CV03932 en el SUMAC.
[7] Apéndice del recurso, pág. 96. Véase, además, Entrada Núm. 219 del Caso Núm. BY2021CV03932 en el SUMAC.
[8] Íd., págs. 97-102.
[9] Íd., págs. 116-132.

como a favor de las partes que representa, debido a que tenía conocimiento personal sobre hechos materiales al caso de autos que serían objeto del eventual juicio en su fondo.

El 31 de diciembre de 2023, el licenciado JQJ, en representación de EQJ, se opuso a la solicitud de descalificación instada por EMP y el licenciado Miñana Rodríguez.[10] Sostuvo, en síntesis, que las alegaciones esbozadas en dicho petitorio eran falsas, engañosas y carentes de fundamento, por lo que debía ser denegada. Planteó que no existían los alegados conflictos de interés ni la probable responsabilidad pecuniaria.

Asimismo, el 10 de enero de 2024, EMP y el licenciado Quiñones Gandarillas, en representación de EMP y del licenciado Miñana Rodríguez, se opusieron a la moción de descalificación promovida por EQJ.[11] Según adujo, no existía conflicto de interés alguno para con las partes en el caso, toda vez que, en ningún momento, el letrado fue consultado sobre estrategias, procesos, descubrimiento de prueba o decisiones sobre la litigación de los casos de las partes que representa.

Evaluadas las posturas de las partes, el 29 de febrero de 2024, notificada al día siguiente, el Tribunal de Primera Instancia emitió la *Resolución* que nos ocupa.[12] Concluyó que los abogados en cuestión, al ser las partes del pleito, tener intereses personales o tener un familiar o un interés en el resultado de este, son incapaces de representarse o representar a sus clientes de manera adecuada. Expresó que dichos representantes legales tampoco habían sido capaces de manejar el pleito de la manera más rápida y eficiente. Indicó que, luego de examinar la conducta de los abogados y evaluar el expediente judicial, todavía no se ha comenzado el descubrimiento de prueba, aun cuando el caso fue incoado en el año 2021. Resolvió que todos los abogados y oficinas legales descalificadas tienen pleitos distintos entre sí, por hechos relacionados, lo cual indicaba que no tenían la capacidad de auto representarse o

---

[10] Apéndice del recurso, págs. 188-195.
[11] Véase, Entrada Núm. 229 del Caso Núm. BY2021CV03932 en el SUMAC.
[12] Apéndice del recurso, págs. 205-226.

representar a otros. En virtud de lo anterior, el foro *a quo* descalificó, en lo pertinente, al licenciado JQJ y a cualquier abogado que sea socio, familia o tenga interés personal con las partes.

Inconforme, el 27 de marzo de 2024, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó el siguiente señalamiento de error:

> Erró el TPI al ordenar la descalificación del Lcdo. José Quetglas.

En cumplimiento con nuestras *Resoluciones* del 3 y 19 de abril de 2024, EMP compareció mediante *Oposición a Expedir Auto de Certiorari* el 29 de abril de 2024, mientras que el licenciado Miñana Rodríguez compareció por derecho propio mediante escrito de igual título el 1 de mayo de 2024.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o

en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Banco Popular de Puerto Rico v. Gómez Alayón y otros*, 2023 TSPR 145, resuelto el 19 de diciembre de 2023; *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra*. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co*., 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte peticionaria plantea como su único señalamiento de error que el Tribunal de Primera Instancia incidió al ordenar la descalificación del

licenciado JQJ. En síntesis, sostiene que nada en el expediente sustentaba la conclusión de que dicho letrado sea incapaz de representar a EQJ de manera adecuada o de manejar el pleito de la forma más rápida y eficiente. Arguye que la mera relación familiar, como cuestión de derecho, no debe ni puede ser el único fundamento que de paso a la descalificación del licenciado JQJ.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al descalificar al representante legal del peticionario, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar los documentos que obran en autos, concluimos que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones